REDERIAKTIEBOLAGET AMIE v. UNIVERSAL TRANSP. CO., Inc.

(Circuit Court of Appeals, Second Circuit. March 13, 1918.)

No. 135.

1. SHIPPING ⬤⟶49(2)—CHARTER—HIRE MONEY—TENDER—SUFFICIENCY.

A charter party gave the charterer an option to purchase the vessel for the amount of the hire. After plaintiff, the charterer, had exercised the option, an attachment was levied on all moneys in its hands owing the owner. The order vacating the attachment was not entered until the day after an installment of the charter hire or purchase price was due. On the morning following, plaintiff tendered the installment, but it was refused by the bank to which it was tendered; that institution's authority having been withdrawn without notice. *Held* that, though an attorney from the owner verbally asserted authority to receive the installment, the tender was sufficient, and the owner was not authorized to withdraw the vessel.

2. SHIPPING ⬤⟶51—BREACH OF CHARTER—EXCUSE.

Where a charter party, giving the charterer, an American corporation, an option of acquiring the vessel, required the Swedish owner to deposit the bill of sale as soon as possible, the owner's nonperformance cannot be excused, on the ground of action of the Swedish government, where there was no exception in the agreement, like that common in charter parties and bills of lading, of arrests and restraints of princes.

3. SHIPPING ⬤⟶51—BREACH OF CHARTER—WAIVER.

Where defendant, the owner of a vessel, wrongfully withdrew the same from the charterer, which had exercised an option of purchase, the fact that the charterer, after withdrawal, gave directions as to unloading, and continued the name of the vessel on its advertised schedules of sailings for some days after its directions had been repudiated, was not a waiver of the owner's breach of contract, which would render an action, brought a few days after the final breach of contract, and after the name of the vessel had been withdrawn from the selling lists, premature.

4. CONTINUANCE ⬤⟶10—PENDENCY OF ANOTHER ACTION—DEMURRER.

In an action in a federal District Court for New York for breach of a contract to sell a vessel, where the pendency of an admiralty suit appeared on the face of the complaint, that objection was waived, unless taken advantage of by demurrer, in accordance with Code Civ. Proc. N. Y. § 499, and, not having been so taken advantage of, a motion for continuance pending the appeal in the admiralty cause was properly denied.

5. SHIPPING ⬤⟶27—INTEREST AS ELEMENT OF DAMAGES—BREACH OF CONTRACT.

In an action for damages resulting from breach of a contract to sell a vessel, interest was properly allowed upon the value of the vessel, fixed by the jury with reference to market rates.

6. APPEAL AND ERROR ⬤⟶1140(1)—REVIEW—REMITTITUR.

In an action for damages for breach of contract to sell a vessel, where an unpaid installment was not deducted from the value of the vessel as fixed by the jury, because it had been deducted in an admiralty suit growing out of the same transaction, such unpaid installment must be remitted if a judgment for plaintiff be allowed to stand; the decree in the admiralty suit having been vacated for want of jurisdiction.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Universal Transportation Company, Incorporated, against the Rederiaktiebolaget Amie. There was a judgment for

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plaintiff, and defendant brings error. Affirmed, on condition that plaintiff file remittitur; otherwise, reversed, and new trial ordered. See, also, 245 Fed. 282, 157 C. C. A. 474.

Engel Bros., of New York City, Conlen, Brinton & Acker, of Philadelphia, Pa., and Joseph G. Engel, of New York City, W. J. Conlen, of Philadelphia, Pa., and Van Vechten Veeder, of New York City (Everett H. Brown, Jr., of Philadelphia, Pa., on the brief), for plaintiff in error.

Kirlin, Woolsey & Hickox, of New York City (J. P. Kirlin and Cletus Keating, both of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. May 16, 1916, after the decision of the admiralty suit considered in the opinion handed down herewith (250 Fed. 194, —— C. C. A. ——), the Universal Company began an action at law with a warrant of foreign attachment against the Amie Company to recover damages for its breach of the contract of sale of the steamer Ada. The defendant withdrew the steamer April 6, 1916, and justified its action on the ground that the plaintiff had not paid an installment of charter hire due April 4th in the sum of $45,000 on that day; the contract giving the defendant the right of "immediately" withdrawing the vessel in case of default.

It appeared that on March 30th, in a suit of one Berney against the steamer Ada and the defendant, an attachment was levied on all moneys in the hands of the plaintiff, owing to the defendant. This, of course, prevented the plaintiff from making payment. By stipulation, however, between the parties in the suit, the attachment was vacated and an order signed to that effect April 4th which was not entered until April 5th. A copy of the proposed order was sent to the plaintiff's attorneys about 6 p. m. of the 4th, but no copy of the order entered was ever served.

[1] The plaintiff had been directed to pay the installment of $45,-000 to the Irving National Bank, which because of the attachment it could not do on the 4th. The bank's authority to receive the payment was withdrawn without notice to the plaintiff, so that, if the money had been tendered on the 5th, the tender would have been refused, as it was when tendered, April 6th, at 10 a. m. The defendant, by substituting no one to receive payment in place of the bank, made tender impossible. Judge Mayer charged the jury:

"Ordinarily there would be very little on this branch of the case to send to you at all as a matter of law. But as a matter of law I must send to you a single question: Do you believe Mr. Frankel actually did, as he swears he did uncontradicted, tender this money on the morning in question to Johnson at the Irving National Bank, which Johnson refused to take? And when he did it, was he able and willing to carry out his contract, and was that tender made in good faith? If your answer to that is 'Yes,' you must find for the plaintiff. Plaintiff is always required to prove his case by a fair preponderance of evidence. There has been no doubt cast by anybody upon that transaction: that is, that the transaction took place precisely as Frankel said it did; and it is only for you to determine whether what he said in that one

respect is true. But I charge you as a matter of law that from the uncontra-
dicted evidence in this case the 6th of April, under the circumstances, was a
fair and reasonable'time within which to make the tender to any person who,
so far as the plaintiff knew, was entitled to receive that tender. Engel Bros.
had not produced any authority. The mere say-so of an attorney, no matter
how reputable, that he has authority, is of no consequence. Morin testified, as
read to you this morning, that, although he had notified the Irving National
Bank not to accept this money, he had not told the plaintiff, or any repre-
sentative of the plaintiff, of such notification. 'He who runs may read,'
and the inference here of this conduct of Morin's is something that you are
fully capable of drawing. ·That is the single question on that branch of the
case with which you are concerned, and, if what Mr. Frankel says took place
at the Irving National Bank, you must find a verdict for the plaintiff."

The defendant's exception to. this is the principal assignment of er-
ror relied on. No other person having been appointed to receive pay-
ment, it could not have been safely made thereafter to any one. We
are quite satisfied that the tender to the bank on the morning of the
6th was effectual and sufficient as matter of law. In point of fact the
vessel was not withdrawn until later in the day, about 12:40 p. m., and
of course the actual use of her was not withdrawn until the inward
cargo shipped by the Universal Company had been discharged April
24th, after which date the plaintiff had no use of her at all.

[2] The next assignment of error is that the judge charged the jury
that they were not to take into consideration what was subsequently
done in Sweden about the bill of sale. The defendant had agreed to
deposit a bill of sale with the United States Mortgage & Trust Compa-
ny "as soon as possible." The plaintiff had exercised its option to buy
January 25th, expressed its readiness to pay the balance of the pur-
chase money, and asked for a bill of sale, and on April 5th had ten-
dered the whole balance of $65,000 and interest to the defendant's at-
torneys against delivery of the bill of sale which the defendant was
not prepared to make. No action of the Swedish government would
excuse the defendant from its covenant to do so, there being no excep-
tion in the agreement, like that common in charter parties and bills of
lading, of arrests and restraints of princes. Nor did the evidence ad-
duced show any such restraint by the Swedish government. Therefore
the court properly held as matter of law that the defendant, having
had from December 10, 1915, to April 5, 1916, to deposit the bill of
sale with the United States Mortgage & Trust Company, had breached
its contract in not doing so.

[3] The defendant next objects that the withdrawal of the steamer
April 6th was anticipatory and inoperative, because waived by the
plaintiff. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953.
The alleged waiver is founded on the fact that the plaintiff directed the
master, on the arrival of the steamer April 22d, to discharge cargo at
a certain wharf, which the defendant refused to do; also upon the fact
that the plaintiff left the name of the Ada on its advertised schedules
of sailings for two weeks or more after April 22d. The most that
could possibly be said in favor of the defendant on these facts is that
it gave it a locus pœnitentiæ wherein to tender the bill of sale in fulfill-
ment of its contract, which it never did. On April 24th at the latest,
the contract of sale was presently and absolutely broken, so that this

action, begun May 16th, was not premature, and nothing that the plaintiff did previously relieved the defendant of liability on its contract.

[4] The defendant set up in its answer as a defense that there was pending another action between the same parties for the same cause of action in the admiralty suit, and when the action was reached for trial moved that it be continued pending the appeal in the admiralty cause, which motion was denied. The exception to this ruling cannot be sustained, because the fact of the pendency of the admiralty suit appeared on the face of the complaint and section 499 of the Code of Civil Procedure provides that, if such objection be not taken by demurrer, it is waived.

[5] The proofs show that, owing to the extraordinary freight rates prevailing during the period in question, there was a market value for vessels, depending upon their carrying capacity, with little reference to their age or other qualities. The suit being for the payment of money resulting from a breach of contract, the court rightly held that interest ran upon the value of the vessel when fixed by the jury with reference to market rates, and directed that it run from June 24, 1916, when the charter period would have terminated. No exception raises the question whether this or the time of the breach of the contract of sale was the proper date from which interest should run.

[6] The jury found the value of the vessel to be $345,000, from which they deducted the last unpaid installment of the purchase price, $20,000, with interest, but not the unpaid installment of $45,000, because it had already been deducted from the award made to the Universal Company in the admiralty suit. As we have vacated the court's decree in that suit for want of jurisdiction, this $45,000, with interest from the date of the contract, must be deducted. We see no merit in the other assignments of error.

The judgment will be affirmed, if the plaintiff file a remittitur of the above-mentioned installment of the purchase price. If not, it will be reversed, and a new trial ordered.